UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANCISCO ESPARZA, *et al.*,

Plaintiffs,

v.

ANNING-JOHNSON CO, *et al.*,

Defendants.

Case No. 1:19-cv-EGS

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF A CLASS
ACTION/COLLECTIVE ACTION SETTLEMENT AND INCORPORATED
MEMORANDUM IN SUPPORT OF MOTION**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   CASE BACKGROUND ....................................................................... 2

III.  THE COURT'S PRELIMINARY APPROVAL ORDER .................................... 3

IV.   SETTLEMENT TERMS ..................................................................... 4

V.    ISSUANCE OF NOTICE AND RESULTS OBTAINED ................................... 5

      A.  The Settlement Administrator Sent Notices to the 210 Potential FLSA
          Settlement Collective Class Members and the 228 Rule 23 Settlement Class
          Members. ........................................................................... 5

      B.  87 People Submitted Claims. ...................................................... 6

      C.  No Rule 23 Settlement Class Members Opted Out of or Objected to
          the Settlement ...................................................................... 7

VI.   LEGAL ARGUMENT ....................................................................... 7

      A.  Legal Standards for Settlement Approval ....................................... 7

      B.  The Settlement is Fair, Reasonable, and Adequate ........................... 8

          1.  *The Settlement is the Product of Arm's Length Negotiations
              (Factor 1)* ..................................................................... 9

          2.  *The Terms of the Settlement in Relation to the Strengths of Plaintiffs'
              Case Weigh in Favor of Final Approval (Factor 2)* ..................... 9

          3.  *The Status of the Litigation Proceedings at the Time of Settlement
              Weighs in Favor of Final Approval (Factor 3)* ......................... 13

          4.  *The Reaction of Absent Class Members Has Been Overwhelmingly
              Positive and Weighs in Favor of Final Approval (Factor 4)* .......... 13

          5.  *Plaintiffs' Counsel Believes the Settlement is In the Best Interest of
              the Class (Factor 5)* ........................................................ 14

      C.  The Service Awards Sought Are Appropriate ................................. 14

      D.  Class Counsel is Entitled to the Fees Set Forth in the Settlement
          Agreement ......................................................................... 16

i

VII. THE RULE 23 SETTLEMENT CLASS AND FLSA COLLECTIVE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED FOR PURPOSES OF SETTLEMENT ................................................................ 17

   A.   The Rule 23 Settlement Class Should be Certified ............................................ 17

      1.   *The Proposed Rule 23 Settlement Class Meets the Numerosity Requirement of Rule 23(a)(1)* ................................................ 17

      2.   *The Proposed Settlement Class Meets the Commonality Requirement of Rule 23(a)(2)* .................................................. 18

      3.   *The Proposed Settlement Class Meets the Typicality Requirement of Rule 23(a)(3)* ...................................................... 18

      4.   *The Proposed Settlement Class Meets the Adequacy Requirement of Rule 23(a)(4)* ..................................................... 19

      5.   *The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3)* .................................. 20

   B.   The FLSA Settlement Collective Class Should be Finally Certified ................................ 22

   VIII.   CONCLUSION ............................................................................. 24

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Alvarez v. Keystone Plus Constr. Corp.*
   303 F.R.D. 152 (D.D.C. 2014) ................................................................... *passim*

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................ 17, 20

*Blackman v. D.C.*,
   454 F. Supp. 2d 3 (D.D.C. 2006) ................................................................... 8

*Ceccone v. Equifax Info. Servs. LLC*,
   No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127492
   (D.D.C. Aug. 29, 2016) ............................................................... 10, 15

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
   522 F. Supp. 2d 105 (D.D.C. 2007) ............................................................ *passim*

*Cryer v. Intersolutions, Inc.*,
   Civil Action No. 06-2032 (EGS), 2007 WL 1053214 (D.D.C. Apr. 7, 2007) ........................ 23

*Edelen v. Am. Residential Servs., LLC*, Civil Action No. DKC 11-2744, 2013 U.S.
   Dist. LEXIS 102373 (D. Md. Jul. 22, 2013) ............................................... 21

*Encinas v. J.J. Drywall Corp.*,
   265 F.R.D. 3 (D.D.C. 2010) ......................................................... 18, 22, 23

*Hansberry v. Lee*,
   311 U.S. 32 (1940) .................................................................... 19

*Henry v. Little Mint, Inc.*,
   No. 12 Civ. 3996 (CM), 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23,
   2014) .................................................................................. 15

*Lindsay v. Gov't Employees Ins. Co.*,
   251 F.R.D. 51 (D.D.C. 2008) .......................................................... 19

*In re Lorazepam*,
   Civ. No. 99-0790 (TFH), 2003 U.S. Dist. LEXIS 12344 (D.D.C. Jun. 16,
   2003) ........................................................................... 13, 15, 16

*In re Lozapram & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ......................................................... 15

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................................8

*McKinney v. U.S. Postal Serv.*,
    No. 11-cv-631 (RLW), 2013 U.S. Dist. LEXIS 6246 (D.D.C. Jan. 16, 2013) .................18, 23

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233, 1260-61 (11th Cir. 2008) ...........................................................23

*Osher v. SCA Realty I*,
    945 F. Supp. 298 (D.D.C. 1996) ......................................................................10

*Radosti v. Envision Emi, LLC*,
    717 F. Supp. 2d 37 (D.D.C. 2010) ...................................................................22

*Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist.
    LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ..........................................................10

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..........................................................................17

*Sylvester v. CIGNA Corp.*,
    369 F. Supp. 2d 34 (D. Me. 2005) ...................................................................13

*Thomas v. Albright*,
    139 F.3d 227 (D. C. Cir. 1998) ......................................................................17

*Trombley v. Nat'l City Bank*,
    826 F. Supp. 2d 179 (D.D.C. 2011) .............................................................13, 15

*Twelve John Does v. District of Columbia*,
    551 F.2d 340 (D.C. Cir. 1997) .......................................................................19

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................................20

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...........................................................................8

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) .......................................................................20

*In re Vitamins Antitrust Litig.*,
    305 F. Supp.2d 100 (D.D.C. 2004) ....................................................................7

*Wal-Mart Stores v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................17

*Wells v. Allstate Ins. Co.*,
    557 F. Supp. 2d 1 (D.D.C. 2008) ..........................................................................15

**Statutes and Rules**

District of Columbia Minimum Wage Act, D.C. Code §32-1001, *et seq.* ............................ *passim*

District of Columbia Wage Payment and Collection Law, D.C. Code §32-1301, *et seq.* ..................................................................................................1, 2, 4, 21

District of Columbia Workplace Fraud Act, D.C. Code § 32-1331.01, *et seq.*. ...............1, 2, 4, 21

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ............................................................ *passim*

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

**Other Authorities**

2 McLaughlin on Class Actions § 6:24 (14th ed.) .......................................................................13

Moore's Federal Practice, § 23.45 ...............................................................................................20

For the reasons set out below, Plaintiffs, with consent of all Parties, respectfully move this Court for final approval of a class and collective action for settlement purposes, and for final approval of the proposed settlement agreed to by the Plaintiffs and all Defendants.

## I.    PRELIMINARY STATEMENT

Subject to Court approval, the Plaintiffs in the above-captioned action have settled their claims against Defendants Anning-Johnson Company ("AJC"), HITT Contracting, Inc. ("HITT"), Brothers RC Contractors LLC ("Brothers") and S&R Construction LLC ("S&R") (collectively, AJC, HITT, Brothers, and S&R are the "Defendants") as described herein and in the accompanying Class Action/Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1. The proposed settlement resolves all claims in the lawsuit alleging that Defendants failed to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, failed to pay overtime and minimum wages in violation of the District of Columbia's Minimum Wage Act ("MWA"), DC Code §32-1001, *et seq.*, the District of Columbia's Wage Payment and Collection Law ("WPCL"), DC Code §32-1301 *et seq.*, and misclassified employees in violation of the District of Columbia's Workplace Fraud Act ("WFA"), DC Code § 32-1331.01 *et seq.*  As explained below, this settlement resolves all the claims in the lawsuit, or claims that could have been asserted in the lawsuit on the same facts, and satisfies all of the criteria for final approval.

As an integral part of the settlement, and for the reasons set forth in Part VII, the Parties agree that the Rule 23 Settlement Class and FLSA Settlement Collective Class should be finally certified for settlement purposes.[1]  Accordingly, Plaintiffs respectfully request that the Court: (1)

---

[1] Capitalized terms set out in this Memorandum that are defined in the Settlement Agreement have the same meaning as in the Settlement Agreement.

order final approval of the settlement reached by the Parties as embodied in their Settlement Agreement attached hereto as Exhibit 1; (2) order final certification of a collective action for settlement purposes only, pursuant to §216(b) of the FLSA, covering claims brought under the FLSA ("FLSA Settlement Collective Class"); (3) order final certification of a class for settlement purposes only, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), covering the claims brought under the MWA, WPCL and WFA ("Rule 23 Settlement Class"); (4) order final approval of Francisco Esparza and Yolanda Valle as Class Representatives of the Rule 23 Settlement Class;  (5) order final approval of The Kaplan Law Firm and Handley Farah & Anderson PLLC as Class Counsel; (6) approve the service awards for Francisco Esparza and Yolanda Valle agreed to in the Settlement Agreement; and (7) approve Plaintiffs' attorneys' fees and costs agreed to in the Settlement Agreement.[2] In support of this motion, the declaration of Plaintiffs' counsel, Matthew B. Kaplan, is attached hereto as Exhibit 2.  Defendants consent to this motion.

## II.    CASE BACKGROUND

This case was filed on November 19, 2019 against AJC and HITT on behalf of Plaintiffs and all others who performed construction work for AJC and HITT in the Washington, D.C. metropolitan area and were allegedly paid less than their lawfully owed wages under federal and D.C. law.  It was filed as both an opt-in collective action under the FLSA and D.C. wage-hour law, and as a Rule 23 class action under D.C. wage-hour law.  Although Plaintiffs contend that AJC employed the Plaintiffs, AJC asserted that it did not employ the Plaintiffs or any members of the putative class or collective class.  Accordingly, Plaintiffs amended their complaint on June 15, 2020 to add as Defendants AJC's subcontractors, Brothers and S&R (the entities that allegedly

---

[2] Concurrently with this Motion, Plaintiffs are filing their Unopposed Motion for Approval of Attorneys' Fees and Expenses.

directly employed the Plaintiffs, notwithstanding Brothers' and S&R's contention that Plaintiffs were independent contractors), to ensure that all putative class and collective class members had FLSA claims against a defendant in the case, even if it were to be determined that AJC was not their employer for purposes of the FLSA.

After commencing this litigation, counsel for the Parties conferred and chose to explore a possible settlement. To that end, Defendants provided Plaintiffs with voluminous payment records and other records pertaining to their D.C.-area workers who worked on AJC projects. Formal discovery and other case-related deadlines were stayed while the Parties explored settlement, and the Parties entered a tolling agreement of Plaintiffs' and the putative collective class's FLSA claims on July 3, 2020.

Over the course of the next several months, Plaintiffs devoted considerable resources to analyzing the data provided by Defendants, and on September 21, 2020, the Parties engaged in a full day mediation with retired United States District Judge Benson Legg. Both named Plaintiffs were present and participated in the mediation. With Judge Legg's assistance, the Parties were able to reach a settlement of this matter, which has now been memorialized in the Settlement Agreement attached as Exhibit 1, hereto.

## III.    THE COURT'S PRELIMINARY APPROVAL ORDER

On March 4, 2021, the Plaintiffs filed a Consent Motion for Preliminary Approval of Settlement Agreement, Certification of a Class Action and Collective Action for Settlement Purposes and Approval of Notices to the Classes, which set forth a detailed factual and procedural history of this litigation. See Dkt. 37. In that Motion, the parties requested that this Court: (1) preliminarily approve the settlement reached by the Parties as embodied in their Settlement Agreement; (2) approve the forms of notice attached as Exhibits B-1 and B-2 to the Settlement Agreement; (3) appoint Rust Consulting as the administrator of the Settlement; (4) instruct the

3

Parties to appear for a Fairness Hearing; (5) preliminarily certify a collective action for settlement purposes only, pursuant to §216(b) of the FLSA, covering claims brought under the FLSA ("FLSA Settlement Collective Class"); (6) preliminarily certify a class for settlement purposes only, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("FRCP"), covering the claims brought under the MWA, WPCL and WFA ("Rule 23 Settlement Class"); (7) approve Francisco Esparza and Yolanda Valle as Class Representatives of the Rule 23 Settlement Class; and (8) approve The Kaplan Law Firm and Handley Farah & Anderson PLLC as Class Counsel.

On April 7, 2021, this Court granted the parties' Motion, preliminarily approving the settlement agreement, preliminarily certifying the FLSA Collective Action and Rule 23 Class Action, ordering issuance of settlement notices to collective and class members, appointing Rust Consulting as the claims administrator (hereinafter, the "Settlement Administrator"), and ordering the parties to appear for a Fairness Hearing on October 7, 2021, at 1:00 p.m. Dkt. 38.

## IV.    SETTLEMENT TERMS

A detailed background regarding the arms-length settlement negotiations between the parties, and the terms of the Settlement Agreement that resulted from those negotiations, are set forth in Plaintiffs' Memorandum in Support of Consent Motion for Preliminary Approval of Settlement Agreement, Certification of a Class Action and Collective Action for Settlement Purposes and Approval of Notices to The Classes. Dkt. 37.   The terms of the Settlement Agreement have not changed since April 7, 2021, the date of preliminary approval of the settlement.

## V.    ISSUANCE OF NOTICE AND RESULTS OBTAINED

### A.    The Settlement Administrator Sent Notices to the 210 Potential FLSA Settlement Collective Class Members and the 223 Rule 23 Settlement Class Members.

The Parties complied with the notice plan approved by the Court.  On April 14, 2021, Counsel for Brothers and S&R provided the Settlement Administrator with the names, last known addresses, last known phone numbers, Social Security Numbers and other applicable information of the Potential Settlement Group (the "Class List").  *See* Exhibit 4 -- Decl. of Jennifer Mills ("Mills Decl."), at ¶ 8.  The Class List contained data for 210 Potential FLSA Settlement Collective Class Members, and 223 Rule 23 Class Members.  *See id.*

On May 10, 2021, the Settlement Administrator transmitted the approved Class Notices, in English and Spanish, by first-class mail and text message (when cellular phone numbers were available) to Potential Settlement Group Members.  *See* Mills Decl. at ¶¶ 10-11. Follow-up efforts were made to send the appropriate Notice to those individuals whose original Notices were returned as undeliverable.  *See* Mills Decl. at ¶ 12.

The Collective Action Settlement Notice, the Class Action/Collective Action Settlement Notice, Opt-in Form, and Opt-in/Claim Form all informed Rule 23 Settlement Class Members and Potential FLSA Settlement Collective Class Members of: the relevant and necessary parts of the proposed Settlement Agreement; their rights under the Settlement Agreement; their right to receive an Individual Settlement Payment and the process for submitting a claim for payment; Rule 23 Settlement Class Members' option to object to the Settlement Agreement or any portion thereof or to elect not to participate in the Settlement and the processes for doing so; the right of Potential FLSA Settlement Collective Class Members to opt in to the Settlement and the

procedures for doing so; and the date and location of the final approval hearing. *See* Ex. B-1 and B-2 to Ex. 1.

The Collective Action Settlement Notice advised Class Members that they could submit an Opt-In Form postmarked by July 26, 2021. *See* Ex. B-1 to Ex. 1. The Class Action/Collective Action Settlement Notice advised Class Members that they could submit an Opt-In/Claim Form, exclusion and/or objection postmarked by July 26, 2021. *See* Ex. B-2 to Ex. 1.

**B.    87 People Submitted Claims.**

The deadline to postmark a claim was July 26. 2021. A total of 81 individuals validly and timely opted-in to the FLSA Settlement Collective Class, including the Class Representatives. *See* Mills Decl. at ¶¶ 14-16. A total of six individuals submitted Opt-In Forms or Opt-In/Claim Forms that were not timely submitted on or before the Bar Date. *See id.* at ¶ 16. These six individuals are: Alfonso Lopez; Alfonso Lopez Carrera; Edilson Gutierrez; Juan Martinez; Marcos Carillo; and Walter Veizaga. *See id.* All six of these untimely Opt-In Forms or Opt-In/Claim Forms were received by the Settlement Administrator on or before August 20, 2021. *See id.* The Parties do not object to the inclusion of these six individuals within the FLSA Settlement Collective Class notwithstanding their untimely submission of the required Opt-In Form or Opt-In/Claim Form. No prejudice will result from the inclusion of these six individuals within the FLSA Settlement Collective Class and their inclusion in the FLSA Settlement Collective Class will not delay the conclusion of this matter.[3] Accordingly, Plaintiffs request that the Court deem these six individuals (*i.e.*, Alfonso Lopez; Alfonso Lopez Carrera; Edilson Gutierrez; Juan Martinez; Marcos Carillo; and Walter Veizaga) to be included in the FLSA Settlement Collective

---

[3] Of the $400,000.00 available for the FLSA Collective Action and the Rule 23 Class, a total amount of $332,131.48 has been claimed. *See* Mills Decl. at ¶ 21. The average of the settlement awards is $3,817.60. *See id.*

Class notwithstanding their belated submission of the required Opt-In Form or Opt-In/Claim Form.

This results in a total of 87 individuals in the Settlement Group, or approximately 20% of the Potential Settlement Group Members.  The names of these individuals and the written consent by such individuals to join this action are included with this filing at Exhibit 3.  Also attached as Exhibit G to Ex. 1 (the Settlement Agreement) are the names of the 223 Final Rule 23 Settlement Class Members.

**C.    No Rule 23 Settlement Class Members Opted Out of or Objected to the Settlement**

The Settlement Notices sent to the Rule 23 Settlement Class Members advised members of their right to object to the Settlement. *See* Exs. B-1 and B-2 to Ex. 1. The Rule 23 Notices also advised class members of their right to opt-out of the Settlement. *See* Ex. B-2 to Ex. 1. The Settlement Notices informed class members that the deadline to object to the Settlement was July 26, 2021. *See* Exs. B-1 and B-2 to Ex. 1.  The Settlement Administrator did not receive any written exclusion requests or objections to the Settlement. *See* Mills Decl., ¶¶ 17-18.

**VI.    LEGAL ARGUMENT**

**A.    Legal Standards for Settlement Approval**

Law and federal policy strongly favor the settlement of class action litigation. *See, e.g., Cohen v. Warner Chilcott Pub. Ltd. Co*., 522 F. Supp. 2d 105, 114 (D.D.C. 2007) ("there is a long-standing judicial attitude favoring class action settlements, and the court's discretion is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases."); *In re Vitamins Antitrust Litig*., 305 F. Supp.2d 100, 103 (D.D.C. 2004) ("The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action

settlements."); *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

Court approval is required to settle a Rule 23 class action, and some courts have held that approval is also required to settle an FLSA collective action. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); Fed. R. Civ. P. 23(e). FLSA settlements are reviewed for their fairness and reasonableness. *Lynn's Food Stores,* 679 F.2d at 1353. Likewise, under FRCP 23(e), a court must determine whether a class action settlement is "fair, reasonable, and adequate." "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Alvarez v. Keystone Plus Constr. Corp.* 303 F.R.D. 152 at 163 (D.D.C. 2014), *citing Chilcott*, 522 F. Supp.2d at 120-121.

Courts reviewing proposed settlements under the FLSA and Rule 23 consider a variety of factors. In this Circuit, "there is 'no obligatory test' that the Court must use to determine whether a settlement is fair, adequate and reasonable." *Blackman v. D.C.*, 454 F. Supp. 2d 3, 8 (D.D.C. 2006); *Alvarez,* 303 F.R.D. at 163 ("the D.C. Circuit has not announced a specific test for such consideration . . ."). Courts in this Circuit generally consider five factors: (1) whether the settlement is the result of arms-length negotiations; (2) the terms of the settlement in relation to the strengths of plaintiffs' case; (3) the status of the litigation proceedings at the time of settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel. All five of these factors weigh heavily in favor of settlement approval here.

### B.    The Settlement is Fair, Reasonable, and Adequate

The terms of the settlement for the FLSA Settlement Collective Class and the Rule 23 Settlement Class are fair, reasonable and adequate. The Parties had conducted meaningful discovery at the time of the settlement. The Named Plaintiffs approve of the Settlement, and the

reaction of the class mirrors their view. All Parties were represented by experienced counsel who believe that the settlement is fair and reasonable. Therefore, final approval under the FLSA and Rule 23 is warranted.

### 1.   *The Settlement is the Product of Arm's Length Negotiations (Factor 1)*

As set forth in Plaintiffs' Motion for Preliminary Approval, settlement negotiations were conducted at arm's length with discussions lasting several months. The Parties' negotiations were principled, with each side basing their offers and counter-offers on calculations derived from Defendants' actual pay and timekeeping data for all putative class members.  Prior to mediation, the Parties exchanged meaningful and substantial informal discovery, including comprehensive payment and time records for members of the putative class.  At mediation, litigation discounts were given and taken based on each Party's assessment of risk related to Plaintiffs' claims and Defendants' defenses.

All Parties attended mediation with clients authorized to approve a settlement agreement. *See* Kaplan Decl., at ¶5.  With the help of Judge Legg serving as mediator, the Parties were able to reach a deal after almost 8 hours of in-person (Zoom) mediation – a deal that Plaintiffs and their attorneys have recommended to absent class members and to the Court.  *See id.*  This settlement provides substantial benefits to the Plaintiff classes and will allow a fairly swift resolution of this complex litigation.

Accordingly, the principled, arm's-length negotiations support final approval of the settlement.

### 2.   *The Terms of the Settlement in Relation to the Strengths of Plaintiffs' Case Weigh in Favor of Final Approval (Factor 2)*

While Plaintiffs believe that they would prevail if this case were to be adjudicated on the merits, continuing to litigate this matter would be extremely costly and presents litigation risk.

9

This weighs in favor of final approval. *See Ceccone v. Equifax Info. Servs., LLC,* No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127942, at \*25 (D.D.C. Aug. 29, 2016) (noting that the fact the parties "chose to settle in order to avoid the significant expense (and risk) of summary judgment motions, class certifications, and trial" weighs in favor of approval); *Chilcott,* 522 F. Supp. 2d at 118 (approving settlement where "it is obvious that Plaintiffs faced significant risks in establishing both liability and damages. Even if Plaintiffs had prevailed over these obstacles at trial, it is likely that a verdict would have been followed by an appeal, which might have further delayed the final resolution of this case."); *Osher v. SCA Realty I,* 945 F. Supp. 298, 305 (D.D.C. 1996) ("The costlier it is to go forward with the litigation, the greater chances that an early settlement will be fair, reasonable and adequate."); *see also, Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, \*50 (E.D. Mich. Oct. 18, 2010) ("[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation.").

The Parties' *bona fide* disputes concern both facts and the law. For example, Plaintiffs believe a fact finder would conclude that Defendant AJC was a joint employer of the Plaintiffs and the putative collective class for purposes of FLSA liability. Defendant AJC denies this, contending that Plaintiffs and other individuals in the putative collective class worked solely for its subcontractors, Brothers and S&R. In particular, AJC contends that Plaintiffs cannot demonstrate that AJC was a joint employer under the applicable legal standards, claiming that, with respect to the individuals who worked for Brothers and S&R on AJC projects, that: AJC did not hire or fire them and had no control over which individuals Brothers or S&R utilized to perform the work that was subcontracted to them; AJC had no involvement whatsoever in setting their rate of pay; AJC did not maintain employment records for these individuals; and that Brothers and S&R were ultimately responsible for controlling their work. Although Brothers and

10

S&R are also Defendants in this action, AJC's position has a material impact on the likelihood of success of this action, as both Brothers and S&R are companies of limited means, unlikely to be able to satisfy a large judgment as would be necessary here to fully compensate Plaintiffs and the rest of the collective class.

As another example of the Parties' *bona fide* disputes, Plaintiffs believe that work performed outside of D.C. for a D.C. based employer (such as S&R) is covered by D.C. wage and hour law.  If this case continued to be litigated, Defendants would dispute this contention and would further take issue with the applicability of D.C. law even with respect to some of the work performed in D.C.  Defendants have argued that the DC MWA is the exclusive D.C. law remedy for individuals seeking allegedly unpaid overtime or remedies related to allegedly unpaid overtime for work performed in D.C. and that, in order to be covered by the MWA, each individual must establish that he/she was "employed in the District of Columbia," which requires that either (1) a person regularly spends more than 50% of their working time in the District of Columbia or (2) the person's employment is based in the District of Columbia and the person regularly spends a substantial amount of their working time in the District of Columbia and not more than 50% of their working time in any particular state.  D.C. Code § 32-1003(b).  In Defendants' view, Plaintiffs and each member of the putative class would need to show that they spent the majority of their time working in D.C. on a regular basis during the relevant time period in order to recover anything under D.C. law.[4]  Although Plaintiffs believe there is favorable district court precedent that work done for a D.C.-based company is covered by D.C. law, Defendants would  argue otherwise, citing what they believe to be ambiguous statutory language and the absence of binding

---

[4] If this issue were litigated, Defendants would surely argue that these individual inquiries would preclude class treatment.  This settlement therefore provides relief to the full class, which was by no means certain if this case were litigated and class certification was not agreed-upon.

appellate authority on this issue.  The proposed settlement will, notwithstanding Defendants' litigation position regarding the applicability of D.C. law: entitle class members to recover D.C. damages for work performed outside of D.C. so long as they were working for S&R, a D.C. based company; and also allow class members to recover D.C. damages for all work performed in D.C. for Brothers, which is not based in D.C.

The proposed settlement will also almost certainly compensate all class members at a rate significantly higher than their actual lost wages.  The Settlement Agreement provides that each class member will receive 80% of their calculated damages, including liquidated damages.  *See* Ex. 1 at 4.  An award of 80% of damages will provide compensation to class members far in excess of their actual wages lost.

Relatedly, the Settlement Cap of $400,000 has caused no dilution of the compensation to class members.  Claims valued at $332,131.48 have been received by Rust Consulting, ensuring that class members will not be required to accept a pro rata share of recovery instead of the actual value of their claim.  *See* Mills Decl. at ¶21.

Continued litigation and trial would be long, costly, arduous and complex. This settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. The proposed payments to class members (the calculated Baseline Settlement Amounts) range from $400.00 to $26,460.00 per class member with the average amount being $3,817.60. *See* Kaplan Decl. at ¶ 8).  Here, each class member who participates in the Settlement will receive 80% of their maximum recoverable damages, which far exceeds the actual wages lost.  In light of the nature of the disputes, the procedural posture of the case, the long road ahead of Plaintiffs, the costs to Defendants and to Plaintiffs, and the risks regarding liability and damages, Factor 2 weighs in favor of final approval.

### 3. *The Status of the Litigation Proceedings at the Time of Settlement Weighs in Favor of Final Approval (Factor 3)*

As mentioned, the Parties had engaged in significant informal discovery prior to facing each other at the bargaining table. This includes Defendants' production of pay and time worked records for the entire putative class, from which extensive damages calculations were performed and shared with Defendants. *See* Kaplan Decl. at ¶¶ 18-19). Brothers and S&R produced all available records. Thus, discovery has advanced far enough to allow the Parties to resolve this dispute responsibly, and thus this factor also supports final approval.

### 4. *The Reaction of Absent Class Members Has Been Overwhelmingly Positive and Weighs in Favor of Final Approval (Factor 4)*

The reaction of the class members has been overwhelmingly positive. Despite the detailed Notices received and the opportunity to exclude themselves or opt-out of the Settlement, no one did so. *See Mills* Decl., at ¶¶ 17-18. A total of 87 individuals, or approximately 20% of the Potential Settlement Group Members, filed a claim, which is a favorable response rate. *See, e.g.*, 2 McLaughlin on Class Actions § 6:24 (14th ed.) ("Claims-made settlements typically have a participation rate in the 10-15 percent range.") (citing cases). *See also Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'Claims made' settlements regularly yield response rates of 10 percent or less."). Thus, the lack of objections and opt-outs, in light of the significant number of claims submitted, weighs in favor of approval. *See, e.g., Alvarez*, 303 F.R.D. at 164 (where no member of the class objected or opted-out, this "factor therefore unambiguously weighs in favor of approval"); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 200 (D.D.C. 2011); *In re Lorazepam*, Civ. No. 99-0790 (TFH), 2003 U.S. Dist. LEXIS 12344, at *6 (D.D.C. Jun. 16, 2003) ("[T]he existence of even a relatively few objections certainly counsels in favor of approval."). This is particularly true here, where the overwhelming majority of the class of Potential

Settlement Group Members are members of our immigrant communities, where language barriers and fears of retaliation from employers have the tendency to suppress participation in the civil justice system.[5]

### 5. *Plaintiffs' Counsel Believes the Settlement is In the Best Interest of the Class (Factor 5)*

It is well-established that the opinion of experienced counsel "should be afforded substantial consideration by the court in evaluating the reasonableness of a proposed settlement." *Chilcott*, 522 F. Supp.2d at 121; *Alvarez, et al.*, 303 F.R.D. at 164. Here, Plaintiffs' Counsel has weighed the respective risks to proceeding with litigation and has extensively analyzed the Defendants' potential liability based on thorough damages calculations prepared by Plaintiffs' Counsel using the Defendants' pay and time worked data. *See* Kaplan Decl. at ¶¶ 7, 11. Plaintiffs' Counsel, who, have represented workers in wage and hour lawsuits for many years, have substantial experience litigating wage and hour cases throughout the country (*see* Kaplan Decl. at ¶¶ 2; *see also* Exhibit 5 – Declaration of Matthew K. Handley, at ¶¶ 2-3) and believe that this settlement is fair, reasonable, and adequate. In light of this analysis, Plaintiffs' Counsel and the Settlement Class Representatives believe that settlement is in the best interest of the class.

### C. The Service Awards Sought Are Appropriate

The Settlement Agreement provides that, subject to Court approval, Named Plaintiffs Francisco Esparza and Yolanda Valle shall each receive four Thousand Dollars ($4,000.00) as a Service Award for the time and effort they offered in shepherding this case to a successful conclusion. *See* Ex. 1 at 22. The Service Awards to the Named Plaintiffs shall not be deducted

---

[5] To be clear, Class Counsel has no reason whatsoever to believe that there were any threats of retaliation by Defendants intended to suppress participation in the Settlement.

in any manner from payments that are otherwise due to Settlement Group Members and are not subject to the Settlement Cap.

As this Court has explained in awarding service payments to plaintiffs, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation." *In re Lozapram & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002). Indeed, this Court has routinely held that incentive awards to plaintiffs are reasonable "in light of their investments of time, money, and effort on the part of the class." *Advocate Health Care v. Mylan Labs. Inc.* 2003 U.S. Dist. LEXIS 12344, at *35 (D.D.C. Jun. 16, 2003) (quoting *Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346, at *6 (D.D.C. Jun. 7, 1996)). As one court explained in awarding service payments to plaintiffs involved in filing and litigating a similar claim, "in a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996 (CM), 2014 U.S. Dist. LEXIS 72574, *27 (S.D.N.Y. May 23, 2014).

Service, or incentive, awards are common in the District of Columbia Circuit, often in amounts equal to or exceeding $5,000. *See, e.g., Ceccone v. Equifax Info. Servs. LLC*, 2016 U.S. Dist. LEXIS 127492, at *35-36 (D.D.C. Aug. 29, 2016) (awarding $5,000 to the named plaintiff in FCRA class action); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 208 (D.D.C. 2011) (awarding $5,000 each to three class representatives as "fall[ing] within the range of reasonableness"); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (granting $10,000 incentive award to representative plaintiffs who actively participated in discovery and attended hearings); *Chilcott*, 522 F. Supp. 2d at 124 (awarding $7,500 to each of two named plaintiffs who

15

"fully complied with all demands placed on them during litigation and assisted in Plaintiffs' Counsel's investigation of this case").

In determining whether a service award is warranted, "courts consider factors such as 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Advocate Health Care*, 2003 U.S. Dist. LEXIS 12344 at *35 (quoting *Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998)). Here, the two Named Plaintiffs have taken great steps to protect the interests of the classes, and the classes will benefit from their actions. They put in substantial efforts, meeting with Plaintiffs' counsel in person and by telephone on multiple occasions and taking time off from work to participate in a full day mediation. *See* Kaplan Decl. at ¶ 10. Under the settlement, the two Named Plaintiffs will receive $4,000 each as a Service Award, which will not have any impact on the recoveries of the other Settlement Group Members. *See* Ex. 1 at 22. Accordingly, the requested service payments are warranted and should be approved by the Court.

**D.    Class Counsel is Entitled to the Fees Set Forth in the Settlement Agreement**

In light of the results achieved, Class Counsel respectfully submits that they are entitled to an award of attorneys' fees in the amount of $210,000, inclusive of expenses equaling $1,224.52. Class Counsel has filed a separate motion regarding fees and expenses establishing their entitlement to the requested award and reimbursement of litigation expenses. Significantly, both the Notices to the Settlement Group Members informed the opt-in plaintiffs and class members that Class Counsel would seek these amounts. See Exs. B-1 and B-2 to Ex. 1. No Settlement Group Member, or anyone else, has objected. *See* Kaplan Decl. at ¶ 31.

16

## VII. THE RULE 23 SETTLEMENT CLASS AND FLSA COLLECTIVE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED FOR PURPOSES OF SETTLEMENT

### A. The Rule 23 Settlement Class Should be Certified

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011). Notably, a class may be approved for settlement purposes even though that class might otherwise not pass muster under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011). Indeed, "[c]lasses certified for settlement purposes only are a hallmark of class action litigation." *Alvarez v. Keystone Plus Constr*. 303 F.R.D. at 159; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997) (noting that the settlement-only class has "become a stock device"); *Chilcott*, 522 F. Supp. 2d at 113.

When presented with a settlement-only class, a court must determine whether the proposed class satisfies the requirements of FRCP 23, with one exception: the court is not tasked with determining whether "the case, if tried, would present intractable management problems" as it otherwise would have to determine when ruling on class certification under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620; *see also Thomas v. Albright*, 139 F.3d 227, 234 (D. C. Cir. 1998). Here, the Parties' Final Rule 23 Settlement Class should be finally certified for purposes of settlement. For purposes of settlement, Defendants agree to certification of the Final Rule 23 Settlement Class as set forth in the Settlement Agreement.

#### 1. *The Proposed Rule 23 Settlement Class Meets the Numerosity Requirement of Rule 23(a)(1)*

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." "Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members."

*Chilcott,* 522 F. Supp. 2d at 114; *see also, Alvarez v. Keystone Plus Constr. Corp.,* 303 F.R.D. 152, 160 (D.D.C. 2014); *McKinney v. U.S. Postal Serv.,* No. 11-cv-631 (RLW), 2013 U.S. Dist. LEXIS 6246, at *5 (D.D.C. Jan. 16, 2013).   There are 223 Rule 23 Settlement Class Members. The numerosity requirement is satisfied.

> **2.     *The Proposed Settlement Class Meets the Commonality Requirement of Rule 23(a)(2)***

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  "The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members," such that "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members."  *Chilcott,* 522 F. Supp. 3d at 114.  Here, where all of the putative class members in the Rule 23 Settlement Class are construction workers who, according to Plaintiffs, were subject to the same payment policies and practices of failing to be paid an overtime premium for hours worked over 40 in a week and being misclassified as independent contractors, the commonality requirement has been satisfied.

> **3.     *The Proposed Settlement Class Meets the Typicality Requirement of Rule 23(a)(3)***

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class."  "Typicality requires that the claims of the representative be typical of those of the class" and often "overlaps with the commonality inquiry, as each seeks to determine the practicality of proceeding with a class action and the extent to which the plaintiffs will protect the interests of absent class members."  *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 9 (D.D.C. 2010) (internal quotations and citation omitted).  Here, the Named Plaintiffs' claims are all based on the alleged failure of Defendants to pay workers overtime pay

at time and one-half their hourly rate for all hours worked above 40 in a workweek, alleged failure to pay the minimum wage, and alleged failure to classify such workers as employees. *See, e.g., Lindsay v. Gov't Employees Ins. Co.,* 251 F.R.D. 51, 55 (D.D.C. 2008) (class representative's claims are typical if they "arise from the same events, practice, or conduct, and are based on the same legal theory as those of other class members, the typicality requirement is satisfied) (quoting 5 MOORE'S FEDERAL PRACTICE § 23.24[2] at 23-93 (3d ed. 2002)); *Chilcott,* 522 F. Supp. 2d at 115 (typicality is satisfied where "Plaintiffs' claims and those of absentee members of the Settlement Class arise from the same events, and involve the same legal theory and elements of proof").

### 4.    *The Proposed Settlement Class Meets the Adequacy Requirement of Rule 23(a)(4)*

Rule 23(a)(4) allows class certification only if the named representatives will "fairly and adequately protect the interests of the class."  This requirement is essential to due process, as a judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32, 43 (1940).  The D.C. Circuit has set out two criteria for determining the adequacy of representation: "1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 551 F.2d 340, 345 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Regional Med. Programs, Inc. v. Matthews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).  Here, both requirements are easily satisfied.

First, the Named Plaintiffs have the same interests as the rest of the class members in the class they seek to certify: as non-exempt hourly-rate construction workers, they seek to recover what they believe are the proper wages earned for all hours worked, including when such payments allegedly were not paid in accordance with the District of Columbia's overtime laws.

19

The Named Plaintiffs also seek to recover damages for allegedly being misclassified as independent contractors. *See Chilcott,* 522 F. Supp. 2d at 115 (adequacy is satisfied where "Plaintiffs and the absentee Class Members shared the identical objectives of establishing liability and obtaining damages").

Second, plaintiffs' counsel are qualified, as they are experienced lawyers with considerable experience in litigating wage and hour actions throughout the United States. Plaintiffs are represented by the Kaplan Law Firm and Handley Farah & Anderson PLLC. Counsel from these firms have significant experience and skill in representing plaintiffs in class and collective litigation. *See* Exs. 6 and 7 (firm resume of Handley Farah & Anderson and of Matthew B. Kaplan). Prior to founding the law firm of Handley Farah & Anderson, Matthew Handley was the legal director of the Washington Lawyers' Committee for Civil Rights and Urban Affairs, where he oversaw the Lawyers' Committee's substantial wage and hour docket. *See* Handley Decl. at ¶ 3. Mr. Kaplan also has extensive experience in litigating complex litigation, including wage and hour cases and high value class actions. *See* Kaplan Decl. at ¶ 2.

### 5. *The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3)*

Rule 23(b)(3)'s predominance test focuses on the number and significance of common questions and "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." Moore's Federal Practice, § 23.45[2][a], pp. 23-219-220; *Tyson Foods, Inc.*, 136 S. Ct. at 1045; *Amchem Products*, 521 U.S. at 623. As this Court has noted, "in general, predominance is met where there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *In Re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C.

2002). "Significantly, the common issues need only be predominant, not dispositive of the litigation." *Chilcott,* 522 F. Supp. 2d at 116.

Plaintiffs' D.C. law class action focuses on the following issues, common to all members of the putative classes: (1) Defendants' alleged failure to provide proper overtime compensation (and, in a few instances, proper payment of the minimum wage); (2) Defendants' alleged failure to properly classify workers as employees rather than independent contractors, and (3) whether such practices violate the MWA, WPCL and WFA.

These issues easily satisfy the predominance test, as this Circuit – as well as federal courts around the country – have determined in similar cases. *See, e.g., Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 162 (D.D.C. 2014) (noting that the predominance requirement is met where the "violations the Plaintiffs allege stem from Keystone's generalized practice of failing to pay its employees the overtime to which they were entitled; indeed, that central element of Plaintiffs' theory of liability in this case is common to every class member."). *See also Edelen v. Am. Residential Servs., LLC*, Civil Action No. DKC 11-2744, 2013 U.S. Dist. LEXIS 102373, *18-19 (D. Md. Jul. 22, 2013) (predominance inquiry is met where all claims of the Rule 23 settlement class "present the same legal question, i.e., whether Defendants' alleged common method for calculating overtime rates of pay . . . violated the MWHL.").

In determining whether a class action is superior to other available methods, Rule 23(b)(3) identifies four elements that are pertinent to a court's determination, only three of which are necessary to assess when parties request class certification for settlement purposes only: (A) the class members' interests in controlling their own separate actions; (B) the extent and nature of any relevant, pending, litigation brought by or against class members; and (C) the desirability of concentrating the litigation in the particular forum.  Fed. R. Civ. P.

21

23(b)(3)(A)-(C). "The superiority requirement ensures that resolution by class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Chilcott,* 522 F. Supp. 2d at 117 (quoting *Amchem,* 521 U.S. at 615)). In the present case, a class action is superior to other available methods for enforcing plaintiffs' rights under District of Columbia law.

First, individual actions, controlled and prosecuted by hundreds of individual plaintiffs, asserting very similar wage and hour claims, many for small amounts, would burden both the courts and the potential plaintiffs. *Id.* at 117 (finding class action to be superior where "the size of the Settlement Class, the uniformity of issues regarding Defendants' liability, and the fact that the Class Members' individual claims are miniscule in comparison to the cost of prosecuting this type of complex litigation"). Second, Named Plaintiffs are unaware of any relevant pending litigation brought by or against Rule 23 Settlement Class Members. Third, it is desirable to concentrate the litigation in one forum, and in particular, D.C., because much of the work was performed in D.C. and the claims associated with the Rule 23 class arise under D.C. law.

Further, "[b]ecause the class is being certified for purposes of settlement only, the Court need not consider whether the case, if tried, would present intractable management problems." *Radosti v. Envision Emi, LLC,* 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (citing *Amchem*, 521 U.S. at 620). Accordingly, superiority is satisfied here.

## B.    The FLSA Settlement Collective Class Should be Finally Certified

To join a collective FLSA action, prospective plaintiffs (other than the initial, named plaintiff or plaintiffs who brought the lawsuit) must "affirmatively opt in" by filing consent in writing with the court. *Encinas v. J.J. Drywall Corp.*, 265 F.R.D. 3, 7 (D.D.C. 2010); *see also* 29 U.S.C. § 216(b). "[T]his Court and other courts have adopted a conditional certification process,

whereby a court may conditionally certify the collective action . . . upon an initial showing the members of the class are similarly situated and then may later revisit the certification as the case develops." *Cryer v. Intersolutions, Inc.,* Civil Action No. 06-2032 (EGS), 2007 WL 1053214, at *2 (D.D.C. Apr. 7, 2007).  Only a "modest factual showing" of substantial similarity is required for conditional certification.  *McKinney*, 585 F. Supp. 2d at 8 (quoting *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "Because conditional certification is not binding and is merely meant to facilitate providing notice to potential class members so that they may choose to opt in to the collective action, the court employs a lenient standard in making such a determination."  *Encinas*, 265 F.R.D. at 6 (emphasis added) (quoting *McKinney*, 585 F. Supp. 2d at 8) (citations and internal quotation marks omitted)); *see Morgan v. Family Dollar Stores*, Inc., 551 F.3d 1233, 1260-61 (11th Cir. 2008) ("We have described the standard for determining similarity . . . as not particularly stringent, fairly lenient, flexible, [and] not heavy . . . .").

Plaintiffs and the Potential Settlement Collective Class Members are "similarly situated" under § 216(b).  All proposed class members performed similar duties, and all were subject to Defendants' practices of allegedly not properly paying wages.  Final certification should be granted, particularly in light of the lenient standard applied, and Defendants' consent to such certification.  Plaintiffs and the FLSA Settlement Collective Settlement Class form a cohesive body of similarly situated workers whose claims are well-suited for collective action.  A collective action will avoid the proliferation and expense of individual lawsuits that could result in disparate rulings and waste of judicial and party resources. Furthermore, collective action ensures access to counsel that many proposed class members would otherwise lack.

As part of conditional certification, courts typically order identification of potential plaintiffs and authorize notice to such individuals.  *McKinney*, 585 F. Supp. 2d at 8 (granting

plaintiff's motion for identification and notice).  Here, identification of the members of the collective class has already occurred as part of informal discovery, and notice was accomplished through the Class Notices described herein, which informed individuals of their rights and enabled their recovery of unpaid wages.

Accordingly, the FLSA Settlement Collective Settlement Class should be finally certified.

## VIII.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Final Approval Order attached to this Motion as Exhibit 8.

Dated:  September 7, 2021

Respectfully submitted,

    /s/Matthew B. Kaplan
Matthew B. Kaplan
D.C. Bar No. 484760
The Kaplan Law Firm
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
Telephone: (703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

    /s/Matthew K. Handley
Matthew K. Handley
DC Bar No. 489946
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Avenue, NW - Seventh Floor
Washington, DC  20001
Telephone: 202-559-2411
email: mhandley@hfajustice.com

*Plaintiffs' Counsel and Proposed Counsel for the Rule 23 Settlement Class and FLSA Settlement Collective Class*

**Certificate of Service**

I hereby certify that this document will be sent to all Parties by the Court's electronic filing system.

/s/      Matthew K. Handley
Matthew K. Handley

Date:      September 7, 2021

25